**Opinion filed July 29, 2016**



# In The

# Eleventh Court of Appeals

_____

## No. 11-14-00309-CV

_____

## UNIQUE STAFF LEASING, LTD., SELF-INSURED, Appellant
## V.
## KENLEY CATES, AS BENEFICIARY OF KODY
## RYAN CATES, DECEASED, Appellee

**On Appeal from the 29th District Court**

**Palo Pinto County, Texas**

**Trial Court Cause No. C44659**

### O P I N I O N

This is an appeal from the judicial review of an administrative decision in a workers' compensation case in which benefits were awarded to Kenley Cates, as beneficiary of Kody Ryan Cates, deceased.[1] Ultimately, there were two separate jury trials in this case. In the first trial, the sole question presented to the jury was whether Kody was intoxicated from the voluntary introduction of marihuana into his

_____

[1]We note that Kenley is a minor child but that she appeared through her parent and natural guardian, Janeth Menchaca, and was represented by an attorney.

body when he sustained the injury that caused his death. The jury found that Kody was not intoxicated at that time. Later, in a separate jury trial, a different jury awarded attorney's fees to Appellee. The trial court entered a judgment in which it incorporated the juries' findings from the two trials. We affirm in part and reverse and render in part.

At the time of the accident, Kody worked for Unique Staff Leasing, Ltd., Self-Insured, a temporary employment company that placed Kody with Northeast Services d/b/a Horton Tree Services. Kody worked as a lineman for Northeast Services and, at the time of the accident, was doing work for Time Warner, a client of Northeast Services. As a lineman, Kody worked on the cables that ran between utility poles. On the morning of the accident, Kody arrived at work and loaded the equipment into his truck that he would need for the jobs assigned to him and his partner for that day. Each morning that Kody went to work, he saw a fellow employee, Chester Lewis Hess. Kody also worked in the field with Hess many times throughout their employment with Northeast Services. On the morning of the accident, Hess talked with Kody, went over Kody's assignments for the day, and discussed the materials that Kody would need.

The last job that Kody performed that day required the use of a "cherry picker"—a utility bucket that Kody stood in while he completed his assigned task at a height of fifteen feet. Kody failed to use his safety harness during this assignment as required by his employer and by federal law. While Kody was in the cherry picker, Justin Allen Plyler, his supervisor, told Kody that he was going to take a ladder back to the truck and get a cigarette. While Plyler was at the truck, he heard a tool that Kody was using fall to the ground. When Plyler turned toward Kody, he saw that Kody had fallen from the cherry picker to the ground. The record is unclear as to whether Kody was wearing his safety helmet at the time. Kody died a few days later as a result of severe head trauma that he suffered in the fall.

2

Just after Kody's accident, hospital personnel performed a urinalysis, the results of which revealed the inactive metabolite of marihuana. A blood test taken after his death revealed similar results.

Appellee sought workers' compensation death benefits. In a hearing at the administrative level, the Texas Department of Insurance, Division of Workers' Compensation, found that Kody was not intoxicated at the time of his injury. The appeals panel affirmed the decision of the hearing officer. Appellant then filed a suit for judicial review of the administrative decision.

At trial, Dr. Stevan Cordas testified by deposition as an expert on the issue of intoxication. Dr. Cordas testified that the results of the blood test and urinalysis, standing alone, did not show that Kody was intoxicated at the time of his injury. Instead, he testified that other information, such as testimony from witnesses who observed Kody's behavior on the date of the accident, was necessary to determine whether Kody was intoxicated.

Dr. Dana Brian Mirkin testified by deposition as an expert for Appellant. Dr. Mirkin stated that, based on the blood test and urinalysis results as well as Kody's failure to wear his safety harness, it was his opinion that Kody was intoxicated at the time of his injury. At one point, Dr. Mirkin agreed with Dr. Cordas that, in addition to a positive urinalysis or blood test, other information—such as witness statements—was necessary to determine intoxication. However, Dr. Mirkin testified that statements by those who observed Kody that day would not change his opinion that Kody was intoxicated at the time of his injury.

Kody's fiancée, Janeth Menchaca, testified that she had breakfast with Kody on the day of his injury and that she did not believe that he was intoxicated at that time. When Kody arrived at work on the morning of his injury, Hess briefly spoke with Kody; Hess testified that Kody's behavior and appearance were the same as any other morning. On the day of Kody's accident, he worked with Plyler. The two

worked together in the morning and early afternoon. Plyler testified that Kody did not smoke marihuana while on the job that day and that Kody was not away from him for a sufficient length of time for Kody to have smoked marihuana. Plyler testified that Kody's performance and capabilities that day were similar to any other day. Plyler also testified that, if he had thought that Kody was unable to complete the assigned tasks, he would not have let Kody work with him that day.

The jury found that Kody was not intoxicated at the time of the accident. After the jury had returned its verdict, Appellee filed an Application In Support Of Attorney's Fees And Request For Entry of Final Judgment. In response, Appellant took the position that Appellee had waived her right to collect attorney's fees. The trial court held a hearing on whether Appellee waived her right to recover attorney's fees. After that hearing, the trial court ordered, and subsequently held, a separate trial on attorney's fees before a new jury.

The second jury awarded Appellee $41,413.22 in attorney's fees for legal representation in the trial court. The jury also awarded prospective attorney's fees in the amount of (1) $12,000 if legal representation continued through the court of appeals, (2) $15,000 if legal representation continued at the petition-for-review stage in the Supreme Court of Texas, and (3) $10,000 if legal representation continued and the petition for review was granted and additional briefing or oral arguments were requested by the Supreme Court of Texas.

Appellant raises five issues for our review. In its first issue, Appellant argues that the evidence was legally insufficient to support the trial court's judgment that Kody was not intoxicated at the time of his accident. Specifically, Appellant argues that expert testimony is required to rebut the presumption of intoxication and that the expert testimony of Dr. Cordas was not sufficient to rebut the presumption of intoxication. Appellant also contends that the testimony from its own expert,

Dr. Mirkin, conclusively established that Kody was intoxicated at the time of the accident.

The Texas Labor Code provides that a party that seeks judicial review of an administrative decision regarding compensability or death benefits has the burden of proof by a preponderance of the evidence. TEX. LAB. CODE ANN. §§ 410.301(a), 410.303 (West 2015). Because Appellant lost at the administrative level and sought judicial review of the issue of intoxication, Appellant had the burden of proof by a preponderance of the evidence on that issue at trial. *See id.*

"[A] party [that] attacks the legal sufficiency of an adverse finding on an issue on which [it] has the burden of proof . . . must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When we consider a legal sufficiency challenge, we review all the evidence in the light most favorable to the trial court's judgment and indulge every reasonable inference in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit any favorable evidence if a reasonable factfinder could and disregard any contrary evidence unless a reasonable factfinder could not. *Id.* at 827. We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810 (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)).

Intoxication is defined in the Texas Labor Code, in relevant part, as "not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body" of a controlled substance. LAB. § 401.013(a)(2)(B).

Marihuana is one such controlled substance. TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (West Supp. 2015), § 481.032 (West 2010); *see also Adkins v. Tex. Mut. Ins. Co.*, No. 04-07-00750-CV, 2008 WL 4500322, at *2 (Tex. App.—San Antonio, Oct. 8, 2008, no pet.) (mem. op.). Under Section 401.013(c) of the Labor Code, a rebuttable presumption arises that the employee was intoxicated if an insurance carrier provides evidence, through a blood test or urinalysis, of the employee's introduction of a controlled substance into his body. LAB. § 401.013(c).

At trial, Appellant provided blood test and urinalysis results that showed the presence of the inactive metabolite of marihuana, an indication that Kody had marihuana in his system. Consequently, Appellee had the burden to rebut the presumption of intoxication. *See* LAB. § 401.013(c); *Bituminous Fire & Marine Ins. Co. v. Ruel*, No. 07-12-00507-CV, 2014 WL 2553348, *5 (Tex. App.—Amarillo June 4, 2014, pet. denied) (mem. op.) (explaining that Ruel "rebutted the presumption of intoxication to the satisfaction of the jury *and* established by a preponderance of the evidence that he was not intoxicated at the time of the accident" (emphasis added)); *Tex. Mut. Ins. Co. v. Havard*, No. 01-07-00268-CV, 2008 WL 598347, *4 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (finding that Havard rebutted the presumption of intoxication to the satisfaction of the trial court *and* that "a reasonable fact finder could conclude that Havard was not intoxicated at the time of his injury").

Appellee offered both expert and lay person testimony to show that Kody was not intoxicated at the time of the accident. Appellant argues that expert testimony is necessary to rebut the presumption of intoxication because whether a person is intoxicated is a complicated medical condition that is outside the common knowledge and experience of jurors. Generally, expert testimony is required when the testimony concerns information or knowledge outside that of an ordinary lay person. *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982).

6

In support of this argument, Appellant cites two cases[2] in which the Supreme Court of Texas found that expert testimony was necessary. First, in *Insurance Co. of North America v. Myers*, the Supreme Court of Texas considered the necessity of expert testimony to link an injury in the course and scope of employment to the aggravation of an existing tumor. *Ins. Co. of N. Am. v. Myers*, 411 S.W.2d 710, 713–14 (Tex. 1966). Second, in *Guevara v. Ferrer*, the court found that the evidence was legally insufficient to support the $1.1 million jury finding on medical expenses because there was not sufficient expert evidence that all the expenses were due to injuries caused by the accident. *Guevara v. Ferrer*, 247 S.W.3d 662, 665, 669–70 (Tex. 2007). These cases are distinguishable from the case before us in that the Supreme Court of Texas held that expert testimony was necessary to explain the *causation* of the complicated medical condition at hand. *Id.*; *Myers*, 411 S.W.2d at 713.

Here, the question is not whether intoxication *caused* Kody's injuries. Instead, the question is simply whether Kody's injury occurred while he was in a state of intoxication. In *Roark*, the court explicitly stated that expert testimony is required when the topic of testimony is outside the experience of laymen. *Roark*, 633 S.W.2d at 809. Here, in line with Section 401.013(a)(2)(B) of the Labor Code, the trial court defined intoxication in the jury charge as "the state of not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of marijuana."

---

[2]We note that one of the other cases that Appellant cites for this argument concerns the lack of expert testimony on the diagnosis of skull fractures and the applicable standard of care. *Roark*, 633 S.W.2d at 809 (finding that "the diagnosis of skull fractures is not within the experience of the ordinary layman"). Additionally, Appellant cites two cases that concern expert testimony in products liability suits, not medical causation. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 640–43 (Tex. 2009) (finding that the expert's testimony in a products liability suit was legally insufficient to support the jury verdict because his theory was not reliable); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006) (determining that expert testimony was needed in a design defect suit to show that the alleged defect in the fuel system caused the fire that occurred after the accident).

7

In *American Interstate Insurance Co. v. Hinson*, the Beaumont Court of Appeals explained that "normal behavior is observable[] and that non-experts are competent to provide testimony relevant to whether a person acted normally." *Am. Interstate Ins. v. Hinson*, 172 S.W.3d 108, 117 (Tex. App.—Beaumont 2005, pet. denied). *Hinson* concerned a claim for workers' compensation benefits for an employee that fell from a steel structure. *Id.* at 110. After the accident, a urinalysis was positive for marihuana. *Id.* at 112. Hinson lost at the administrative level and sought judicial review. *Id.* at 114. Consequently, Hinson had the burden to prove by a preponderance of the evidence that he was not intoxicated at the time of his injury. *Id.* Hinson, alone, testified in his defense, without objection to his lay testimony, regarding his lack of intoxication. *Id.* at 111–12, 115. The jury found that Hinson was not intoxicated at the time of his injury. *Id.* at 114. The court found that Hinson's lay testimony that concerned his lack of intoxication at the time of the injury was "some evidence that he had the normal use of his physical and mental faculties at the time of the injury." *Id.* at 115. Further, the court found that the expert testimony that Hinson was intoxicated at the time of his injury was not conclusive and that a reasonable juror could disregard such evidence. *Id.* at 117, 119–20. Consequently, the court found that the evidence, even without expert testimony that Hinson was not intoxicated, was legally sufficient for the jury to find that Hinson was not intoxicated at the time of his injury. *Id.* at 119–20.

Unlike the case before us, *Hinson* specifically concerned the lay testimony of an employee who had personal knowledge of how the marihuana affected him, rather than the lay testimony of a third-party observer, but we agree with the court's statement that a lay person is competent to testify to whether a person was acting normally at the time of the injury. *See id.* at 117 ("We believe . . . that normal behavior is observable, and that non-experts are competent to provide testimony relevant to whether a person acted normally.").

The *Hinson* court cautioned that evidentiary problems might be an issue when attempting to lay the predicate for observational testimony rather than testimony based on personal knowledge. *Id.* at 116. However, the *Hinson* court stated that the court did not need to analyze the issue of whether the proper predicate was laid because Hinson's testimony was admitted without objection. *Id.* Similarly, we need not decide whether a proper predicate was laid because the lay testimony that indicated that Kody had the normal use of his mental and physical faculties was admitted without objection. *See id.*

Appellant argues that *Hinson* is distinguishable in that the court relied on the criminal definition of intoxication because it cited and analyzed criminal cases. We note that we have previously analyzed the definition of intoxication from both the Texas Penal Code and the Texas Labor Code and have determined that they are substantially the same. *Powers v. Tex. Mut. Ins. Co.*, No. 11-08-00088-CV, 2010 WL 337144, at *1 (Tex. App.—Eastland Jan. 29, 2010, pet. denied) (mem. op.). Additionally, Appellant argues that *Hinson* is not applicable because the rebuttable presumption of intoxication was not codified at the time of the *Hinson* decision. We do not agree that this change in the Labor Code affects the applicability of the *Hinson* decision to the case before us.

After the rebuttable presumption of intoxication was codified in the Labor Code, an appeals panel for the Texas Division of Workers' Compensation considered whether the rebuttable presumption required expert scientific or medical evidence to sufficiently rebut the presumption. Tex. Div. Workers' Comp., Appeal No. 062507-s, 2007 WL 747437, at *2 (Jan. 31, 2007). The panel noted that the addition of the rebuttable presumption to Section 401.013 of the Labor Code did not include a requirement that the presumption be rebutted by expert evidence. *Id.* As a result, the appeals panel declined to establish a requirement that expert testimony must be used to rebut the presumption of intoxication. The panel did, however, find

9

that the lay testimony before it was not enough to rebut the presumption because it merely consisted of the worker's conclusory one-line statement that he was not intoxicated at the time of the injury. *Id.*

The First Court of Appeals has also determined whether lay testimony could support a jury's finding regarding intoxication. *See Dall. Nat'l Ins. Co. v. Lewis*, No. 01-10-00528-CV, 2011 WL 2436505, at *1 (Tex. App.—Houston [1st Dist.] June 16, 2011, no pet.) (mem. op.). *Lewis* concerned an employee that was killed while driving a shuttle bus. *Id.* The workers' compensation appeals panel denied compensation to Lewis, the employee's next friend, at the administrative level, and Lewis sought judicial review of the appeals panel's decision. *Id.* As a result, Lewis had the burden of proof. *Id.* at *4. The medical examiner's results indicated that the employee tested positive for cocaine in his system. *Id.* at *2. The trial court found that the employee was not intoxicated at the time of his injury. *Id.* at *1. The insurance carrier then appealed the trial court's judgment and challenged the legal sufficiency of the evidence. *Id.* at *1, 4. The insurance carrier specifically argued that the trial court "'incorrectly lent weight'" to the lay opinion testimony of the employee's coworker, who testified that the employee's actions on the night of his death were normal. *Id.* at *4. The rebuttable presumption of intoxication applied at the time of the court's decision in *Lewis*, and the court relied on *Hinson* and held that the lay witness testimony of the employee's coworker was legally sufficient to support the jury's verdict that the employee was not intoxicated at the time of the accident. *Id.* at *4 n.2, *6.

The Amarillo Court of Appeals also noted that lay witnesses are competent to testify as to whether a person acted normally. *Ruel*, 2014 WL 2553348, at *4 (noting that Ruel's supervisor and coworker testified that he "was fit for duty and acted normal" and citing *Lewis* and *Hinson* for the proposition that these individuals were competent to provide testimony as to whether Ruel acted normally).

We find *Hinson*, and the cases that rely on *Hinson*, persuasive. As a result, we hold that expert testimony is not required to rebut the presumption of intoxication under Section 401.013(c) of the Texas Labor Code. We agree with the *Hinson* court that lay witnesses are competent to testify as to whether an individual acted "normally" based on the witnesses' observations. Our holding, however, should not be construed to opine one way or the other that lay witnesses are competent to testify as to whether an individual is intoxicated by marihuana or any other specific controlled substance. The evidence that is necessary to show that a person is acting normally, or is not intoxicated, is quite different than the evidence that is required to prove that a person is intoxicated.

Although expert testimony may not be required, it was presented in this case; therefore, it is necessary for us to review Appellant's specific contentions regarding the deficiency of Dr. Cordas's testimony. Appellant argues that Dr. Cordas's testimony is contradictory because, at the beginning of his testimony, he stated that he could not provide an opinion as to whether Kody was intoxicated at the time of his injury, but then through a hypothetical, he provided the opinion that, if the presumed information was true, Kody was not intoxicated. We do not believe that the testimony of Dr. Cordas was contradictory.

The fact that Dr. Cordas gave an opinion based on hypothetical information does not mean that Dr. Cordas provided contradictory testimony. Rather, his opinion was developed through the use of a hypothetical question as is permitted when questioning an expert witness. In addition, here, the expert testimony did not bind the jury. *See* TEX. R. EVID. 703; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 562 (Tex. 1995); *see also City of Keller*, 168 S.W.3d at 820 ("Even uncontroverted expert testimony does not bind jurors unless the subject matter is one for experts alone."). Moreover, the jury, as the sole judge of the credibility of the

witnesses, was free to believe all or part of a witness's testimony. *City of Keller*, 168 S.W.3d at 819.

In addition to Dr. Codas's expert testimony that Kody was not intoxicated, Appellee also presented lay witness testimony to show that Kody was not intoxicated at the time of his injury. Menchaca testified that she was with him the entire weekend prior to his injury. She explained that the couple spent the weekend relaxing with family and friends. On Monday, she was not sure whether Kody went to work, but she recalled having dinner with him that night. Kody's accident occurred on Tuesday. On Tuesday morning, Kody had breakfast with Menchaca, and she testified that, to her knowledge, he was not "high" at that time.

Hess, an employee of Northeast Services and the cousin of Kody's father, testified that, when Kody arrived at work on the date of the accident, he spoke with Kody for a brief period. He testified that Kody did not seem any different that day than he had seemed any other day.

Plyler, Kody's supervisor, testified that Kody worked jobs alongside him throughout the day. Plyler testified that he worked with Kody on a daily basis and that he knew Kody outside of work as well. Plyler had been around people that had used marihuana, and he had used marihuana himself. Plyler knew of Kody's marihuana usage but had not used marihuana with him. Plyler testified that he could recognize when someone had used marihuana and when they had not. He testified that, during the day, Kody did not seem clumsy and did not have trouble remembering how to complete work-related tasks. Kody worked just like he had on any other day. Further, he testified that, unquestionably, he believed that Kody had not used marihuana on the date of his injury. Plyler based this testimony on his knowledge of Kody and his working with Kody daily for over a year.

Plyler also testified that he had seen Kody the night before his injury. Kody came to Plyler's home to have his hair cut by Plyler's wife. Plyler testified that

12

Kody's behavior that night was normal, that Kody did not appear to have smoked marihuana prior to his arrival, and that Kody did not smoke marihuana at Plyler's house.

Appellant argues that Plyler's testimony was not sufficient to rebut the presumption of intoxication. Specifically, Appellant argues that Plyler testified that Kody's actions and behavior were "normal" on the date of his injury but that Plyler also testified that Kody acted abnormally by not wearing his safety equipment.

However, several individuals, including Plyler, testified that, while it may be unsafe to fail to wear the safety harness, they had all done so on occasion. Hess and Thomas "Joe" Hoschar, another employee of Northeast Services, both explained that the harness often gets in the way of the job, especially quick jobs similar to that which Kody was performing on the date of his injury. Hoschar, Hess, and Plyler further testified that, when they had failed to wear their safety gear, they were not intoxicated. Additionally, Plyler agreed that the location of this job was perfect to go up into the cherry picker without the fear of being caught by a Time Warner representative for not wearing the safety harness.

Appellant further argues that Plyler's testimony was insufficient to rebut the presumption of intoxication because Plyler testified that the signs that he recognized in individuals that had smoked marihuana were their silly actions and bloodshot eyes. While these may be the only signs Plyler could describe as symptoms of marihuana intoxication, Plyler also testified as to how Kody acted on the day he was injured. From his observations, Plyler testified that Kody had the same behavior and abilities as Kody had any other day. The jury, as the sole judge of the credibility of the witnesses, was free to believe all or part of Plyler's testimony, as well as the testimony by other lay witnesses. *City of Keller*, 168 S.W.3d at 819.

Additionally, Appellant argues that the evidence was legally insufficient to show that Kody was not intoxicated because Dr. Mirkin's testimony conclusively

established that Kody was intoxicated at the time of his injury. We disagree. "Evidence is conclusive only if reasonable people could not differ in their conclusions, a matter that depends on the facts of each case." *Id.* at 816 (footnote omitted). Under a legal sufficiency review, we are required to disregard Dr. Mirkin's testimony unless reasonable jurors could not. *See id.* at 827; *see also Hinson*, 172 S.W.3d at 117.

Neither Dr. Cordas nor Dr. Mirkin defined "normal" use of mental or physical faculties. As a result, the jury "was free to determine what would constitute normal" for Kody. *See Hinson*, 172 S.W.3d at 117 ("Dr. Kurt did not define 'normal' use of mental faculties. In absence of any scientific evidence conclusively establishing normal use, the jury was free to determine what would constitute normal use in Hinson's case."). Although, at one point, Dr. Mirkin agreed with Dr. Cordas that the blood test and urinalysis results, standing alone, do not show that Kody was intoxicated at the time of his injury, Dr. Mirkin later testified that witness statements would not change his opinion that Kody was intoxicated at the time of his injury. He agreed that other information, such as "witnesses, [and] other evidence, based around the accident," should be used to determine whether Kody had the normal use of his mental and physical faculties at the time of his injury.

Dr. Mirkin testified that, in his expert opinion, Kody was intoxicated at the time of his injury because marihuana was present in his system and because Kody failed to use his safety harness. Dr. Mirkin testified that Kody's failure to wear his safety harness was the only performance deficit that Dr. Mirkin relied on to form his opinion. Further, Dr. Mirkin testified that he would base his opinion on this deficit in performance even if Kody had failed to use his safety harness on previous occasions.

Additionally, contrary to his prior testimony that witness statements should be considered to determine intoxication at the time of the injury, Dr. Mirkin testified

that the statements from other individuals that observed and interacted with Kody on the date of his injury would not change Dr. Mirkin's opinion that Kody was intoxicated at the time of his injury. Despite testimony by other individuals who indicated that the failure to wear the safety harness was not necessarily an uncommon practice for individuals in this field, and despite Hess, Hoschar, and Plyler testifying that they were not intoxicated at the times that they failed to use their safety harnesses while on the job, Dr. Mirkin opined that Kody's failure to use his harness showed that he was intoxicated.

In opposition to Dr. Mirkin's testimony, Dr. Cordas testified that, if other individuals that knew Kody well and had observed him complete difficult tasks testified that Kody seemed "normal" on the day of his injury, it would suggest that Kody was not intoxicated at the time of his injury. As we have noted, Plyler and Hess, two individuals that often observed and worked with Kody, testified that he seemed "normal" on the date of his injury and that there was nothing unusual about his behavior that day. We find that a reasonable jury could have disregarded Dr. Mirkin's testimony that Kody's failure to use his safety harness was an indication of intoxication and, instead, accepted, and found credible, the testimony of Dr. Cordas and the individuals that worked in the same field as Kody that the failure could simply have resulted from a desire to get the job done quickly.

We hold that Dr. Mirkin's scientific and expert testimony in this case did not conclusively show that Kody did not have the normal use of his mental and physical faculties at the time of his injury. Consequently, we further hold that, based on the testimony of Dr. Cordas, in addition to the testimony of lay witnesses, the evidence was legally sufficient to support the jury's verdict that Kody was not intoxicated at the time of his accident. As a result, we overrule Appellant's first issue.

In its second issue, Appellant argues that the evidence is factually insufficient to support the jury's verdict that Kody was not intoxicated at the time of the accident.

15

In reviewing a factual sufficiency challenge, we consider all of the evidence and uphold the finding unless it is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Several witnesses accounted for Kody's time, actions, and behavior on the day of and the days leading up to his injury. Menchaca testified that Kody was with family all weekend prior to the accident that occurred on a Tuesday. On Monday, Menchaca could not remember if Kody worked, but she testified that they had dinner together and that he went to Plyler's house to get a haircut. Plyler testified that Kody came to Plyler's house for a haircut on the night before the accident, stayed approximately an hour, and did not seem like he had smoked marihuana prior to his arrival.

On the morning of his injury, Kody had breakfast with Menchaca, and she testified that he was not "high" at that time. When Kody arrived at work, he spoke with Hess, who testified that Kody's behavior was not out of the ordinary. While at work, Kody worked alongside Plyler, who testified that Kody acted normally and did not have trouble doing his job. Plyler testified that the specific signs of marihuana intoxication that he knew about were that the person would act silly and have bloodshot eyes.

But Plyler and Hoschar also testified that it was out of character for Kody to fail to wear his safety harness. However, several witnesses, including Plyler, testified that they had failed to wear the required safety harnesses and that their failure to do so was not due to intoxication.

Dr. Cordas testified that, if other individuals who knew Kody and observed his behavior stated that he seemed normal on the day of the accident, then that would suggest, with a reasonable degree of medical certainty, that Kody was not intoxicated at the time of the accident. Both Dr. Cordas and Dr. Mirkin agree that the presence of the inactive marihuana metabolite indicates past use of marihuana and that it can

16

show up in a urinalysis for weeks after use. There is no indication in the record as to when the use of marihuana occurred.

Dr. Mirkin testified that, based on the positive drug screen and the fact that Kody failed to wear his safety harness, Kody was intoxicated at the time of his injury. Dr. Mirkin initially testified that other witness testimony should be used to determine if an individual is intoxicated at the time of injury. However, Dr. Mirkin later testified that any statements by witnesses that observed Kody on the date of the accident would not change his opinion that Kody was intoxicated at the time of his injury.

We hold that the jury's verdict was not against the great weight and preponderance of the evidence. Each expert provided competing opinions regarding whether Kody was intoxicated, and the lay witnesses provided competent testimony that Kody was acting normally on the day of the accident. This is not a case in which the jury's finding is so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. Consequently, we overrule Appellant's second issue.

In its third issue, Appellant argues that the trial court erred when it awarded attorney's fees to Appellee because Appellee waived her right to recover them. Appellant bases its argument on Appellee's failure to provide evidence of attorney's fees and Appellee's failure to request that the trial court submit a question to the jury on attorney's fees at the original trial on the merits. We agree with Appellant's argument.

In her answer, Appellee requested the recovery of attorney's fees upon a verdict in her favor. Generally, attorney's fees are not recoverable absent an agreement between the parties or a statute that provides otherwise. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006). Under Section 408.221(c) of the Texas Labor Code, a claimant is entitled to recover attorney's fees

upon a favorable verdict at the trial court level when an insurance carrier seeks judicial review of the administrative decision. LAB. § 408.221(c).

In *Transcontinental Insurance Co. v. Crump*, the Supreme Court of Texas held that the "insurance carrier is entitled to have a jury determine" the reasonableness and necessity of disputed attorney's fees recoverable under Section 408.221(c) of the Texas Labor Code. *Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 232 (Tex. 2010). The party that requests attorney's fees has the burden to prove the reasonableness and necessity of those fees. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10–11 (Tex. 1991).

Rule 279 of the Texas Rules of Civil Procedure provides that a ground of recovery is waived when no element of the ground of recovery is submitted to the jury. TEX. R. CIV. P. 279. Moreover, it is the responsibility of the party with the burden of proof on a ground of recovery to request that the issue be submitted to the jury. *See id.*; *see also Cannon v. Sun-Key Oil Co.*, 117 S.W.3d 416, 422 (Tex. App.—Eastland 2003, pet. denied).

Appellee did not request that the trial court submit a jury question on attorney's fees in the trial on Kody's intoxication. In fact, Appellee did not present any evidence of attorney's fees in the first trial. Instead, Appellee submitted a post-verdict motion in which she requested attorney's fees and requested that the trial court enter judgment on the jury verdict.

Appellee relies on several cases to support the proposition that the proper appellate remedy is remand, not waiver, where the party with the burden of proof on attorney's fees fails to present evidence and fails to request the submission of a question on attorney's fees to the jury. Thus, we believe Appellee's argument to be that, because the trial court ordered a separate jury trial on the issue of attorney's fees, this court should affirm the trial court's award of attorney's fees. However, the cases upon which Appellee relies are not applicable here.

First, Appellee relies on a case with similar facts to those before us, *Commerce & Industry Insurance Co. v. Ferguson-Stewart*, in which the First Court of Appeals remanded the attorney's fees issue to the trial court for a separate jury trial. *Commerce & Indus. Ins. Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 748–49 (Tex. App.—Houston [1st Dist.] 2011, no pet.). In *Ferguson-Stewart*, the claimant did not provide evidence or request the submission of a question on attorney's fees to the jury. *Id.* at 748. Instead, the claimant, in a post-trial motion, requested that the trial court award attorney's fees. *Id.* The First Court of Appeals found that remand was appropriate. *Id.* at 748–49. However, when the trial court awarded attorney's fees, the Supreme Court of Texas had yet to decide *Transcontinental Insurance Co. v. Crump*. *See id.* at 748 ("CIIC relies on *Transcontinental Insurance Co. v. Crump*, decided after the conclusion of trial in this case . . . ."). Prior to the decision of the Supreme Court of Texas in *Crump*, it was unclear whether the jury or the trial court should decide the reasonableness and necessity of attorney's fees under Section 408.221(c). *Crump*, 330 S.W.3d at 229 (finding ambiguous the statute that permits attorney's fees under the Texas Labor Code). The *Ferguson-Stewart* court noted that "[t]he supreme court's analysis in *Crump* shows that its conclusion was not an obvious one." *Ferguson-Stewart*, 339 S.W.3d at 749. Consequently, because *Crump* was available to the court of appeals but not to the trial court and because the claimant attempted to pursue her right to recover attorney's fees, the court in *Ferguson-Stewart* found that remand was the appropriate remedy. *Id.* at 748–49. Here, the parties and the trial court had the benefit of *Crump* prior to the first jury trial. Therefore, under *Crump*, Appellee should have presented evidence of and requested a jury question on the issue of attorney's fees at the first trial.

Second, Appellee relies on *Discover Property & Casualty Insurance Co. v. Tate*, in which the claimant failed to request the submission of a jury question on attorney's fees. *Discover Prop. & Cas. Ins. Co. v. Tate*, 298 S.W.3d 249, 251–52

19

(Tex. App.—San Antonio 2009, pet. denied). Again, however, the trial court's judgment in *Tate* came prior to the decision of the Supreme Court of Texas in *Crump*. Because the law was unsettled as to whether a jury or the trial court should determine the reasonable amount of attorney's fees under Section 408.221(c), and "in the interest of justice," the San Antonio Court of Appeals found that remand was the appropriate remedy. *Tate*, 298 S.W.3d at 257 ("Tate [did not] waive[] his claim for fees by not submitting a jury issue on fees or objecting to its omission. Instead, in the interest of justice, we remand for a new trial on the amount of attorney's fees.").

Finally, Appellee argues that a case cited by Appellant in its brief, *Z.A.O., Inc. v. Yarbrough Drive Center Joint Venture*, supports her claim that she did not waive her right to recover attorney's fees. *Z.A.O., Inc. v. Yarbrough Drive Ctr. Joint Venture*, 50 S.W.3d 531 (Tex. App.—El Paso 2001, no pet.). However, *Z.A.O.* is distinguishable from the case before us as well. In *Z.A.O.*, the prevailing party prevailed in a contract dispute. *Id.* at 550. The problem in *Z.A.O.* was that the prevailing party failed to segregate the amount of attorney's fees between its tort and contract causes of action. *Id.* Because the prevailing party was not entitled to recover attorney's fees on its tort cause of action, the court remanded the attorney's fees issue. *Id.* at 550–51.

We find that these cases do not support Appellee's argument. Additionally, we have previously found that a party waives its right to recover attorney's fees when it fails to put on evidence of attorney's fees and fails to request the trial court to submit a question on attorney's fees to the jury. *Fuqua v. Oncor Elec. Delivery Co.*, 315 S.W.3d 552, 560 (Tex. App.—Eastland 2010, pet. denied) (holding that Oncor's request for the trial judge, rather than the jury, to determine the reasonableness of its attorney's fees and the failure to submit the question of attorney's fees to the jury resulted in a waiver of Oncor's claim for the recovery of attorney's fees).

Consequently, we hold that, under Rule 279, Appellee waived her right to recover attorney's fees.

Although prior to *Crump*, it may have been routine for a claimant to request recovery of attorney's fees in a post-trial motion, *Crump* clarified the insurance carrier's right to a jury determination of the reasonableness and necessity of attorney's fees. *See Crump*, 330 S.W.3d at 232. Because this case was tried approximately three years after the decision in *Crump*, we do not find that justice requires affirmance of the trial court's award of attorney's fees after a second, separate jury trial on this issue. We sustain Appellant's third issue.

Appellant's fourth issue concerns whether the trial court erred when it ordered a separate trial on attorney's fees. Appellant's fifth issue concerns whether the trial court erred when it granted Appellee attorney's fees for the time spent seeking attorney's fees. Because we have held that Appellee has waived her right to recover attorney's fees, we do not reach Appellant's fourth and fifth issues. *See* TEX. R. APP. P. 47.1.

We reverse the trial court's judgment as it relates to the award of attorney's fees, and we render judgment that Appellee take nothing as to her claim for attorney's fees. In all other respects, we affirm the judgment of the trial court.


JIM R. WRIGHT
CHIEF JUSTICE


July 29, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.