Opinion filed June 28, 2019



## In The

# Eleventh Court of Appeals

_____

## No. 11-17-00130-CV

_____

## FRANCIS GONZALES, INDIVIDUALLY AND AS SURVIVING WIDOW OF CARLOS GONZALES, Appellant

## V.

## BRAD WILLIAMS D/B/A BRAD WILLIAMS FARMS, Appellee

**On Appeal from the 106th District Court**

**Dawson County, Texas**

**Trial Court Cause No. 15-05-19588**

### M E M O R A N D U M   O P I N I O N

Appellant, Francis Gonzales, individually and as surviving widow of Carlos Gonzales,[1] appeals the trial court's order granting summary judgment in favor of Appellee, Brad Williams d/b/a Brad Williams Farms. Appellant filed suit against Appellee for negligence and gross negligence arising out of a single-vehicle accident

---

[1]We will refer to Francis Gonzales as "Appellant," and we will refer to Carlos Gonzales as "Gonzales."

that resulted in Gonzales's death. In a single issue, Appellant contends that the trial court improperly granted summary judgment in favor of Appellee. We affirm.

*Background Facts*

Carlos Gonzales was involved in a single-vehicle rollover accident involving a 1987 Freightliner that occurred near O'Donnell. It is undisputed that, at the time of the accident, Gonzales was acting within the course and scope of his employment with Appellee. Gonzales died from his injuries while being transported to a hospital. Appellant filed a wrongful death lawsuit against Appellee for negligence and gross negligence.

Appellee was a nonsubscriber under the Texas Workers' Compensation Act. In reliance upon a statutory defense in the Act, Appellee filed a traditional motion for summary judgment alleging that Gonzales was intoxicated as a matter of law because Gonzales had multiple controlled substances in his body at the time of the accident. *See* TEX. LAB. CODE ANN. § 406.033(c)(2) (West 2015). Appellee supported the allegation with a toxicology report produced by Dr. Patricia Rosen and an autopsy report, which Appellee included as a part of his summary judgment evidence. The autopsy report, which included a blood test, noted that Gonzales had amphetamine, methamphetamine, and fentanyl in his blood at the time of the accident. Dr. Rosen's toxicology report concluded that, based on the level and ratio of methamphetamine in Gonzales's blood, Gonzales "had to have introduced methamphetamines into his body prior to [the] accident and his death. The amounts indicate voluntary introduction and the substance is a controlled substance[.]" Thus, Appellee asserted that Appellant's claims against Appellee were barred as a matter of law because Gonzales was intoxicated.

Appellant timely filed a response to Appellee's motion for summary judgment, alleging that a fact issue existed as to whether Gonzales was intoxicated. Appellant's argument was based solely on the affidavit of Texas Department of

2

Public Safety Trooper Joshua Loftin, which detailed conversations Trooper Loftin had with Appellee and another witness, Alejandro Esparza, sometime after the accident. Trooper Loftin recalled that Appellee had said that, at breakfast on the morning of the accident, Gonzales "appeared to be normal and there were no indications that there was anything wrong" with his physical or mental abilities.

The trial court initially heard Appellee's motion for summary judgment on January 2, 2016. Both Appellant and Appellee appeared, through their attorneys, at this hearing.[2] At the end of the hearing, the trial court expressed concern that the only evidence offered to rebut Appellee's argument that Gonzales was intoxicated at the time of the accident was Trooper Loftin's affidavit. However, the trial court decided to "leave [the] motion for summary judgment open" to consider later after the parties had additional time to develop evidence.

Over a year later, the trial court set another hearing on Appellee's motion for summary judgment. The trial court set the hearing for February 22, 2017, in an order entered on February 8, 2017. Appellant filed a motion to set aside the hearing, arguing that, pursuant to Rule 166a(c) of the Texas Rules of Civil Procedure, she did not receive twenty-one days' notice before the hearing. Appellant also asserted that the consideration of Appellee's motion for summary judgment was premature because additional discovery had not been completed since the first hearing.

Appellee responded to Appellant's motion, asserting that he had complied with Rule 166a(c) by timely filing his motion for summary judgment and supporting affidavits before the first hearing in January 2016. Appellee asserted that he was not

---

[2]The Texas Supreme Court has held that a reporter's record is neither necessary nor appropriate to the purposes of a summary judgment hearing. *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 292 n.141 (Tex. 2004). Irrespective of this directive, the parties have filed a reporter's record for two hearings held on Appellee's motion for summary judgment. We have been aided by the reporter's record because it permits us to review the parties' arguments concerning notice. The reporter's record has also provided us with the details of the trial court's rulings at each hearing. We have not considered the reporter's record for determining the merits of Appellee's motion for summary judgment.

required to provide twenty-one days' notice for the February 2017 hearing because Appellee was "not submitting a new motion for summary judgment" but, rather, was "requesting a re-hearing on the same motion that was heard last year."

The trial court conducted the second summary judgment hearing on February 22, 2017.  Appellant did not present any additional summary judgment evidence.  After hearing the arguments of counsel, the trial court concluded that no fact issue existed and that Gonzales was intoxicated at the time of the accident. Accordingly, the trial court granted Appellee's motion for summary judgment.

*Analysis*

In a single issue on appeal, Appellant asserts that the trial court erred in granting Appellee's traditional motion for summary judgment.  Appellant presents two arguments in support of her sole issue on appeal: (1) Appellant did not have reasonable notice of the second summary judgment hearing and (2) there were genuine issues of material fact that precluded summary judgment.  We review a summary judgment de novo.  *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).  When the trial court's order fails to specify the grounds for its summary judgment, we will affirm if any of the theories are meritorious.  *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact as to at least one essential element of the cause of action being asserted and that it is entitled to judgment as a matter of law.  TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017).  If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment.  *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678– 79 (Tex. 1979).  When reviewing a traditional motion for summary judgment, we

4

review the evidence in the light most favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts against the motion. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

Appellant argues that summary judgment was improper because she did not receive "reasonable notice" and that the trial court erred "in not setting aside the hearing due to Appellant's specific objection on the lack of twenty-one (21) day notice." In her motion to set aside the summary judgment hearing, Appellant asserted that she was "entitled to twenty-one (21) days' notice before the hearing." The trial court disagreed with Appellant's contention by noting that the hearing in February 2017 was not another hearing but rather was a continuation of the prior hearing.

Except on leave of court, Rule 166a(c) requires a motion for summary judgment to be filed and served at least twenty-one days before the time specified for hearing. TEX. R. CIV. P. 166a(c). This rule requires at least twenty-one days' notice of the hearing on a motion for summary judgment regardless of how far in advance of the hearing the nonmovant receives the motion itself. *Winn v. Martin Homebuilders, Inc.*, 153 S.W.3d 553, 555 (Tex. App.—Amarillo 2004, pet. denied) (citing *Chadderdon v. Blaschke*, 988 S.W.2d 387 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). The Amarillo Court of Appeals addressed a similar situation in *Winn*. The trial court in *Winn* conducted a subsequent hearing to reconsider its previous ruling on a motion for summary judgment. *Id.* at 555–56. The court of appeals determined that the second hearing did not require twenty-one days' notice. *Id.* at 556. The court based its holding in part on the principal that a ruling on a motion for summary judgment is interlocutory and may be changed or modified before final judgment is rendered without a further motion or prior notice to the parties. *Id.*

5

We agree with the reasoning in *Winn* and find that it is applicable to the circumstances in this case. There is no dispute that Appellant was provided with the requisite twenty-one days' notice of the first hearing on Appellee's motion for summary judgment. That hearing concluded without the trial court entering a ruling on the motion. Instead, the trial court invited the parties to submit additional summary judgment evidence as discovery occurred in the case. Over a year later, the trial court again considered Appellee's motion for summary judgment. As was the case in *Winn*, the second hearing to reconsider the pending motion for summary judgment did not require twenty-one days' notice to the parties.

Appellant also asserts that summary judgment was improper because there were genuine issues of material fact as to whether Gonzales was legally intoxicated at the time of the accident. Appellant contends that (1) the affidavit of Trooper Loftin, (2) a statement made in Dr. Rosen's toxicology report, and (3) Appellant's answers to Appellee's interrogatories created a genuine issue of fact as to Appellee's affirmative defense of intoxication. Conversely, Appellee asserts that the trial court properly granted summary judgment in favor of Appellee because Appellant failed to raise a fact issue to rebut his probative evidence of intoxication.

Section 406.033 of the Labor Code, "which is part of the Workers' Compensation Act, governs an employee's personal-injury action against his or her employer, when the employer is a nonsubscriber under the Act." *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000); *see* LAB. §§ 401.001–419.007 (West 2015 & Supp. 2018). Appellee was not a subscriber under the Workers' Compensation Act. "To encourage employers to obtain workers' compensation insurance, section 406.033 penalizes nonsubscribers by precluding them from asserting certain common-law defenses in their employees' personal-injury actions." *Kroger Co.*, 23 S.W.3d at 349; *see* LAB. § 406.033(a). However, "section 406.033(c) dictates the defenses that implicate the employee's conduct and on which an employer may

6

rely." *Kroger Co.*, 23 S.W.3d at 351; *see* LAB. § 406.033(c). These are "by an act of the employee intended to bring about the injury" or "while the employee was in a state of intoxication." LAB. § 406.033(c).

The relevant definition of intoxication as provided in Section 401.013(a)(2)(B) of the Labor Code is as follows:

> (2) not having the normal use of mental or physical faculties resulting from the voluntary introduction into the body of:
> . . . .
>
> (B) a controlled substance or controlled substance analogue, as defined by Section 481.002, Health and Safety Code.

*Id.* § 401.013(a)(2)(B). A controlled substance "means a substance, including a drug, an adulterant, and a dilutant, listed in Schedules I through V or Penalty Group 1, 1-A, 2, 2-A, 3, or 4." TEX. HEALTH & SAFETY CODE ANN. § 481.002(5) (West 2017). A controlled substance analogue means the following:

> (A) a substance with a chemical structure substantially similar to the chemical structure of a controlled substance in Schedule I or II or Penalty Group 1, 1-A, 2, or 2-A; or
>
> (B) a substance specifically designed to produce an effect substantially similar to, or greater than, the effect of a controlled substance in Schedule I or II or Penalty Group 1, 1-A, 2, or 2-A.

*Id.* § 481.002(6)(A)–(B). In cases involving controlled substances, "there is no level or test defined by the statute that establishes per se if a person has lost use of his or her physical and mental faculties." *Tex. Mut. Ins. Co. v. Havard*, No. 01-07-00268-CV, 2008 WL 598347, at *3 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.); *see Am. Interstate Ins. Co. v. Hinson*, 172 S.W.3d 108, 115 (Tex. App.—Beaumont 2005, pet. denied). The statutory standard for controlled substances, such as methamphetamine, is relatively subjective. *See Am. Interstate Ins. Co.*, 172 S.W.3d at 115; LAB. § 401.013(a)(2).

7

If an employer "rebuts the presumption of sobriety with probative evidence of intoxication, the burden shifts to the employee to prove that he was not intoxicated at the time of injury." *Tex. Mut. Ins. Co.*, 2008 WL 598347, at *3. The Texas Labor Code provides: "On the voluntary introduction into the body of any [controlled substance], based on a blood test or urinalysis, it is a rebuttable presumption that a person is intoxicated and does not have the normal use of mental or physical faculties." LAB. § 401.013(c).

Appellee introduced summary judgment evidence that Gonzales was intoxicated as defined by Section 401.013(a)(2)(B) of the Labor Code through the autopsy report and Dr. Rosen's toxicology report. The autopsy report indicated that Gonzales had 37 ng/mL of amphetamine, 450 ng/mL of methamphetamine, and 0.34 ng/mL of fentanyl in his blood. Amphetamine is a Schedule III controlled substance. 21 U.S.C. § 812. Methamphetamine is listed in Schedules II and III, depending on the form of the substance, as well as Penalty Group 1. *Id.*; HEALTH & SAFETY § 481.102(6)(West Supp. 2018). Fentanyl is a Schedule II controlled substance. 21 U.S.C. § 812.

Dr. Rosen concluded that, based on the levels of amphetamine, methamphetamine, and fentanyl in Gonzales's blood, Gonzales "had to have introduced methamphetamines into his body prior to [the] accident and his death. The amounts indicate voluntary introduction." The toxicology report noted that methamphetamine and fentanyl are controlled substances and that amphetamine is an analogue. Dr. Rosen further explained:

> Methamphetamine and amphetamine are known to cause impairment and difficulty driving a vehicle. Note that Fentanyl is a sedative pain killer and would also cause difficulty driving a vehicle in someone who does not have significant tolerance to this drug.
>
> . . . .

8

. . . [I]t is . . . likely that Mr. Gonzales had used Methamphetamine recently and that his impairment would have resulted in intense, distracting and overwhelming rapid flow of ideas with excitation, panic and potentially perceptual distortion, hallucinations and delusions. There is a significant decline in concentration and inability to divide attention following use of methamphetamine. Following use of this drug there are errors in judgement and perception.

Based on the autopsy and toxicology report, we conclude that Appellee, a nonsubscriber under the Workers' Compensation Act, rebutted the presumption of sobriety with probative evidence of Gonzales's intoxication under Section 401.013(a)(2) of the Labor Code. *See Tex. Mut. Ins. Co.*, 2008 WL 59837, at *3. Therefore, the burden shifted to Appellant to prove that Gonzales was not intoxicated at the time of his injury. LAB. § 406.033(c).

Appellant contends that the affidavit of Trooper Loftin created a genuine issue of material fact as to whether Gonzales had the normal use of his mental or physical faculties at the time of his injury. Trooper Loftin was one of the troopers who investigated the accident. The affidavit notes that sometime after the accident, Trooper Loftin spoke with Appellee and Alejandro Esparza, the passenger in the vehicle that Gonzales was operating at the time of the accident. In the affidavit, Trooper Loftin states that he recalled Appellee telling him that Appellee, Gonzales, and Esparza "met early for breakfast" on the day of the accident. Trooper Loftin notes in his affidavit:

During the breakfast[,] Carlos Gonzales[] appeared to be happy and in good spirits. Physically and mentally[,] he appeared to be normal and there were no indications that there was anything wrong with Carlos Gonzales['s] physical or mental abilities.

Finally, Trooper Loftin notes that Appellee and Esparza did not express concern regarding Gonzales's ability to operate the vehicle.

9

Trooper Loftin's affidavit does not specify what time Gonzales, Appellee, and Esparza allegedly ate breakfast together on the day of the accident. The affidavit does not provide any indication of whether it was a matter of minutes or hours between the breakfast—where Gonzales allegedly appeared to have the normal use of his mental and physical faculties—and the accident, at which time he was intoxicated. As such, Trooper Loftin's affidavit does not raise a genuine issue of material fact as to whether Gonzales was intoxicated at the time of the accident.

Appellant also asserts that there is evidence that the accident was caused by faulty breaks on the vehicle that Gonzales was operating—rather than intoxication. Specifically, Appellant points to her answer to Appellee's Interrogatory No. 20, in which she asserted that the vehicle had faulty brakes and no inspection sticker. However, "a party cannot rely on its own answer to an interrogatory as summary judgment evidence." *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000). Appellant also contends that the investigating officers concluded that the cause of Gonzales's accident was the vehicle's faulty brakes. The Texas Peace Officer's Crash Report, attached to Trooper Loftin's affidavit, included the "Investigator's Narrative Opinion of What Happened":

> Unit #1 was traveling Southbound on FM 2370. The driver of Unit #1 attempted to stop at the intersection, but the brakes failed on the truck causing him to disregard the stop sign at the intersection, take faulty evasion action to the left, and roll Right Over Top through a fence. Unit #1 came to rest upright in the South barrow ditch facing Northwest.

Appellant also notes that the same crash report is referenced by Dr. Rosen in her toxicology report.

However, causation is not relevant to the intoxication defense. *See* LAB. § 406.033(c)(2); *Kroger Co.*, 23 S.W.3d at 350. We previously noted that "the question is not whether intoxication *caused* [the decedent's] injuries. Instead, the question is simply whether [the decedent's] injury occurred while he was in a state

10

of intoxication." *Unique Staff Leasing, Ltd. v. Cates*, 500 S.W.3d 587, 592 (Tex. App.—Eastland, 2016, pet. denied). Although *Unique Staff Leasing* involved a subscriber to the Workers' Compensation Act, we note that the language in Section 406.032 of the Labor Code, which provides the defenses available to insurance carriers, is substantially similar to the language in Section 406.033, which provides the defenses available to nonsubscribers. *See* LAB. §§ 406.032(1)(A), .033(c)(2) (compare Section 406.032(1)(A), which states that "[a]n insurance carrier is not liable for compensation if . . . the injury . . . occurred while the employee was in a state of intoxication" to Section 406.033(c)(2), which states that "[t]he employer may defend the action on the ground that the injury was caused . . . while the employee was in a state of intoxication"); *see also Unique Staff Leasing*, 500 S.W.3d at 592. Therefore, unrebutted proof of intoxication at the time of a work-related injury is all that is required to bar a plaintiff's claims arising out of such injury. *See* LAB. § 406.033(c)(2); *Kroger Co.*, 23 S.W.3d at 350 ("Section 406.033 further identifies the defenses that implicate the employee's conduct and on which a nonsubscribing employer may rely: the employee intended to bring about the injury, or the injury occurred while the employee was intoxicated."). As such, Appellant's argument that she provided evidence that the vehicle's faulty brakes caused the accident is irrelevant to whether Gonzales was intoxicated at the time of the accident.

We thus conclude that Appellant has not presented any evidence raising a genuine issue of material fact as to whether Gonzales was intoxicated at the time of his injury. *See* LAB. § 401.013(a), (c). Appellee established his right to summary judgment on his affirmative defense of intoxication against all of Appellant's claims by providing probative evidence of Gonzales's intoxication. *Tex. Mut. Ins. Co.*, 2008 WL 598347, at *3. Appellant failed to rebut Appellee's evidence of intoxication and, as such, failed to present any evidence that would preclude summary judgment. *See id.*; *see also City of Houston v. Clear Creek Basin Auth.*,

589 S.W.2d 671, 678–79 (Tex. 1979). Accordingly, the trial court did not err in granting Appellee's motion for summary judgment. We overrule Appellant's sole issue on appeal.

*This Court's Ruling*

We affirm the order of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

June 28, 2019

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.