

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00642-CV

**PESCA HOLDING LLC**,
Appellant

v.

Bengt **SKOLDEBERG** and Gudrun Skoldeberg,
Appellees

From the 57th Judicial District Court, Bexar County, Texas
Trial Court No. 2019CI07873
Honorable Antonia Arteaga, Judge Presiding

Opinion by:    Irene Rios, Justice

Sitting:        Irene Rios, Justice
               Lori Massey Brissette, Justice
               Adrian A. Spears II, Justice

Delivered and Filed: March 18, 2026

AFFIRMED IN PART; REVERSED AND RENDERED IN PART

Appellant Pesca Holding, LLC ("Pesca") appeals the trial court's final take-nothing judgment rendered in favor of appellees Bengt Skoldeberg and Gudrun Skoldeberg (collectively, "the Skoldebergs"). Pesca bought a business and assets of another business from the Skoldebergs and later sued the Skoldebergs for fraud arising from the purchase. A jury found in favor of the Skoldebergs. After the jury was dismissed, the Skoldebergs sought attorney's fees pursuant to a

provision in the purchase agreement. Over Pesca's objection, the trial court held a second jury trial on attorney's fees.

In its first issue, Pesca argues the Skoldebergs waived their right to attorney's fees when they failed to submit a jury question on attorney's fees in the first trial, the trial court erred by holding the second jury trial on attorney's fees absent a formal agreement by the parties, and the subsequent award of attorney's fees should be reversed. In its second issue, Pesca argues that even if the trial court was permitted to hold a second jury trial on attorney's fees, the trial court nevertheless erred by excluding Pesca's experts from testifying to rebut the reasonableness and necessity of the attorney's fees. In its third issue, Pesca argues it proved its fraud claim as a matter of law, and the jury's conclusion that the Skoldebergs did not commit fraud is against the great weight and preponderance of the evidence.

We hold there was sufficient evidence for the jury to conclude the Skoldebergs did not commit fraud. We also hold the record does not contain a clear and unambiguous agreement that the parties agreed to try attorney's fees separately from liability. Thus, the Skoldebergs' waived their right to attorneys' fees when they failed to submit a question on attorney's fees to the first jury. Because we conclude the trial court erred when it held a second jury trial on attorney's fees, we need not consider whether it was error to exclude Pesca's experts' testimony in the second trial. Accordingly, we reverse the trial court's award of attorney's fees, and we affirm all other portions of the trial court's judgment including the award of court costs and the trial court's take-nothing judgment in the Skoldebergs' favor.

## BACKGROUND

Pesca Holding, LLC ("Pesca") is a holding company that owns a window coverings business called BTX Holdings, LLC ("BTX"). Texas Sun & Shade, Inc. ("TSS") is a retail

business that sells window coverings and Vasa Window Coverings, Inc. ("VASA") manufactures window coverings. Pesca entered into an agreement with the Skoldebergs to purchase TSS and the assets of VASA. According to Pesca, VASA's financial disclosures had a line item labeled "customer deposits" that purportedly represented 50% customer deposits on undelivered orders. Pesca alleged it was under the impression that VASA had approximately $688,000 worth of undelivered sales, and the $344,000 line item made up the 50% customer deposits on those sales. After Pesca purchased TSS and the VASA assets it discovered that most of the $344,000 deposits reflected on VASA's financial disclosures were actually cash advances from TSS for future sales rather than customer deposits from current sales. According to Pesca's live pleading, rather than the hundreds of thousands of dollars' worth of sales allegedly portrayed by the financial disclosures, VASA did not have any outstanding orders at the time of the transaction. Pesca then sued the Skoldebergs for fraud and statutory fraud.

After a five-day jury trial, the jury found there was no fraud in the transaction. However, the Skoldebergs failed to submit a jury question on the reasonableness and necessity of attorney's fees. Over a month later, after the jury was dismissed but before the trial court rendered final judgment, the Skoldebergs filed a motion requesting the trial court award them approximately $756,000 in attorney's fees and $50,000 in costs. In response, Pesca filed a motion to strike the Skoldebergs request for attorney's fees, arguing the Skoldebergs waived their right to attorney's fees when they failed to submit a question on attorney's fees to the jury that determined liability.

Over Pesca's objection, the trial court stated the parties agreed to try attorney's fees separately and held a second jury trial on attorney's fees. Pesca sought to call two of its own attorneys as experts to testify regarding the reasonableness and necessity of the attorney's fees sought by the Skoldebergs. The Skoldebergs objected claiming Pesca failed to timely designate

the attorneys as experts under the docket control order ("DCO") for the first jury trial on liability. Pesca argued the timeline in the DCO applied only to the first jury trial and argued it should be given leave to designate experts to contest the Skoldebergs' motion for attorney's fees, which was not filed until after the conclusion of the first trial. The trial court sustained the Skoldebergs' objection and excluded the testimony of two of Pesca's experts because they were not timely designated under the DCO that was in place for the first jury trial. The jury in the second trial on attorney's fees awarded the Skoldebergs $800,000 in attorney's fees, $50,000 in expenses, and $109,500 in contingent appellate attorney's fees should Pesca appeal. Pesca appeals.

## DISCUSSION

In its first issue, Pesca argues the Skoldebergs waived their right to attorney's fees when they failed to submit a jury question on attorney's fees in the first trial, and the trial court erred by holding the second jury trial on attorney's fees absent a formal agreement by the parties. Pesca contends the subsequent award of attorney's fees should be reversed. In its second issue, Pesca argues that even if the trial court was permitted to hold a second jury trial on attorney's fees, the trial court nevertheless erred by excluding Pesca's experts from testifying to rebut the reasonableness and necessity of the attorney's fees. In its third issue, Pesca argues it proved its fraud claim as a matter of law, and the jury's conclusion that the Skoldebergs did not commit fraud is against the great weight and preponderance of the evidence. We address Pesca's third issue first.

### SUFFICIENCY OF THE EVIDENCE SUPPORTING THE JURY'S TAKE-NOTHING JUDGMENT

Pesca, as the plaintiff, bore the burden of proof on its fraud claims. On appeal, Pesca challenges the legal and factual sufficiency of the evidence supporting the jury's adverse findings on Pesca's fraud claims.

When a party attacks the legal sufficiency of an adverse finding that it has the burden to prove, the party must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). "In reviewing a 'matter of law' challenge, [we] must first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary." *Id.* "If there is no evidence to support the finding, [we] will then examine the entire record to determine if the contrary proposition is established as a matter of law." *Id.* We will reverse only if the party who bore the burden of proof conclusively establishes its claim. *Id.*

When a party attacks the factual sufficiency of an adverse finding on an issue that it has the burden to prove, the party must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Id.* at 242. We must consider and weigh all the evidence and can set aside the jury's verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

"To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets, G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (internal quotation marks omitted). To establish statutory fraud in a stock transaction, a plaintiff must show that "the defendant made a false representation of a past or existing material fact to the plaintiff for the purpose of inducing the plaintiff to enter into a contract, and that the plaintiff relied on the representation in entering

into that contract."[1] *Garza v. Garza*, No. 04-11-00310-CV, 2013 WL 749727, at \*5 (Tex. App.—San Antonio Feb. 27, 2013, no pet.) (mem. op.). "The elements of statutory fraud are essentially identical to the elements of common law fraud, except that, to recover actual damages, statutory fraud does not require proof that the defendant made a material, false representation knowing it to be false or made it recklessly as a positive assertion without any knowledge of its truth." *Id.* "Like common-law fraud, the plaintiff's reliance in statutory fraud must be justifiable." *Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd.*, 181 S.W.3d 879, 888 (Tex. App.—Dallas 2006, no pet.) (citing *TCA Bldg. Co. v. Entech, Inc.*, 86 S.W.3d 667, 674 (Tex. App.—Austin 2002, no pet.)); *Lake v. Cravens*, 488 S.W.3d 867, 895 (Tex. App.—Fort Worth 2016, no pet.) ("Indeed, reliance is a necessary element of a statutory fraud claim, and we assume that the reliance must have been justifiable."); *Nelson v. McCall Motors, Inc.*, 630 S.W.3d 141, 147 (Tex. App.—Eastland 2020, no pet.).

To prevail in a legal sufficiency challenge on the common law fraud claim, Pesca was required to prove as a matter of law that the $344,000 customer deposit entry was a material misrepresentation that the Skoldebergs knew was false or was recklessly made as a positive assertion without knowledge of its truth with the intent to induce Pesca to enter into the agreement to purchase TSS and the VASA assets, and Pesca justifiably relied on the entry in entering into the agreement. To prevail in a legal sufficiency challenge on its statutory fraud claim, Pesca must show the Skoldebergs made a false representation of a material fact with the intent to induce Pesca

---

[1] Initially, we question whether Pesca had a viable statutory fraud claim regarding the alleged misrepresentation in the VASA balance sheet. Statutory fraud is limited to "a transaction involving real estate or stock in a corporation or joint stock company . . . ." TEX. BUS. & COM. CODE ANN. § 27.01(a). Pesca claims the customer deposits were reflected as accounts receivable rather than intercompany loans on VASA's financials. However, Pesca did not purchase stock in VASA; rather, it only purchased VASA's assets. Nevertheless, we conclude that even if Pesca had a viable statutory fraud claim regarding the purchase of VASA's assets, there is sufficient evidence to support the jury's take-nothing verdict.

to enter into the agreement to purchase TSS and the VASA assets, and Pesca justifiably relied on that representation.

To prevail in a factual sufficiency challenge, Pesca must show that the evidence supporting those elements as applied to these facts is so weak and against the great weight of the evidence that it is clearly wrong and unjust.

Davide Pesca ("Davide"), an owner of Pesca, testified he could determine from the financial disclosures provided before he purchased TSS and the VASA assets that VASA was not a profitable company. Davide testified he believed the financial disclosures showed VASA had a significant number of customer deposits which indicated there was a large backlog of orders. Davide believed he could clear VASA's backlog and make the business profitable within a year.

Davide admitted the brokerage firm that the Skoldebergs retained to help sell their businesses set up a virtual data room where Pesca could review documents relating to the businesses before he purchased them. The contents of the virtual data room were admitted into evidence without objection. The table of contents for the virtual data room broke down the details of TSS's transactions with VASA and included items labeled in the table of contents as "Cash Advances to VASA on future orders[,]" "Cash Advances to VASA on orders[,]" "Details of Receiva[bl]e VASA for 2018 and 2017[,]" and "VASA-Details of advances and orders coded to AP." A review of those documents shows that TSS made substantial cash advances to VASA throughout 2017 and 2018. One of the Skoldebergs' experts testified that these documents were available in the virtual data room before Pesca entered into the agreement to purchase TSS and the VASA assets. The expert testified that it is clear from these reports that "TSS was making regular and frequent . . . checks to VASA in large[,] rounded amounts." The expert essentially testified that customer deposits in "large[,] rounded amounts" should have put Pesca on notice that these

are not current orders because "the typical average size of an order that VASA would receive would be significantly smaller than [$20,000, $30,000, and], $40,000." She further testified that: "[A] deposit is typically a percentage of your order value. So it would be a very specific number. You would expect it to not be perfectly rounded and large in the way that these items are presented." The expert went on to say that these documents were presented in response to a specific request by Pesca during due diligence for the details related to the VASA receivables, and the items expressly state there were "cash advances to VASA for future orders."

The Skoldebergs both testified that they did not prepare the financial documents Davide reviewed and that they relied on their CPA, bookkeeper, and other professionals in preparing the documents. Davide stated that when he asked about the VASA accounts receivable in the TSS books, he was told by a representative of the brokerage firm that they were customer deposits sent to VASA from TSS for outstanding customer orders. However, the jury could either have disbelieved Davide's testimony, or could have concluded the misrepresentation, if any, was not made by the Skoldebergs.

Two different CPAs, who provided expert testimony on the Skoldebergs' behalf, testified that some of the "customer deposits" on VASA's books were for future orders from TSS. One of the experts explained when VASA received a customer order, the cash deposit would be reflected as an asset in the cash account and then there would be a corresponding liability labeled as a customer deposit until the order was fulfilled. When the order was fulfilled, the liability would be removed. The future customer deposits were reflected as accounts receivable on TSS's balance sheet and as liabilities on VASA's balance sheet. Both experts testified these categorizations were proper, longstanding accounting practices rather than misrepresentations. One of the experts testified that Davide had all the information necessary to cross-reference TSS's and VASA's books

to identify which customer deposits were for current orders and which were cash advances for future orders. The jury could have concluded the CPA's decision to label the payments from TSS to VASA as customer deposits was an accounting classification rather than intentional misrepresentations to induce Pesca into buying the businesses. This position becomes even more reasonable considering there were documents in the virtual data room that expressly stated the TSS customer deposits were for future orders. *See Roxo Energy Co., LLC v. Baxsto, LLC*, 713 S.W.3d 404, 408 (Tex. 2025) ("To prove justifiable reliance, [a plaintiff] must show that (1) it actually relied on the defendant's representation; and (2) such reliance was justifiable.").

When asked whether he ever inquired with the Skoldebergs about the customer order backlog, Davide testified that he only asked "if there was anything we needed to know, [or] anything they didn't tell us that we should know about the businesses." According to Davide, the Skoldebergs said everything is "good and correct." Even though Davide testified that he relayed his intention to move VASA's backlog to BTX, there is no indication that he communicated to the Skoldebergs that he believed the backlog consisted of $688,000 worth of orders. The Skoldebergs could have presumed Davide was talking about current orders rather than the cash advances for future orders when they told him everything is good and correct.

In addition, the jury could have also disbelieved Davide's testimony that he never saw or heard any reference to "future" orders when referring to the $344,000 entry for customer deposits. The jury could have also rejected Davide's testimony that he believed any reference to "future" orders pertained to actual, current customer deposits for active jobsites that would not be completed for the next two or three years. In sum, the jury could have reasonably concluded that the Skoldebergs answer to Davide's non-specific question fell short of an intentional misrepresentation to induce Pesca into buying the businesses, especially considering the jury heard

testimony that the customer deposits entry on VASA's books included deposits from TSS for future orders.

When analyzing the justifiable reliance element of fraud, the supreme court has held that "[i]n an arm's length transaction, the defrauded party must exercise ordinary care for the protection of his own interests." *Orca Assets G.P.*, 546 S.W.3d at 654 (alterations omitted). "A failure to exercise reasonable diligence is not excused by mere confidence in the honesty and integrity of the other party." *Id.* (alterations omitted). "And when a party fails to exercise such diligence, it is charged with knowledge of all facts that would have been discovered by a reasonably prudent person similarly situated." *Id.* (internal quotation marks omitted). "To this end, that party cannot blindly rely on a representation by a defendant where the plaintiff's knowledge, experience, and background warrant investigation into any representations before the plaintiff acts in reliance upon those representations." *Id.* (internal quotation marks omitted).

Davide admitted that two of his CPAs, his lawyer, and his lawyer's paralegal were granted access to the virtual data room as well, but he chose to handle the due diligence himself without input from these professionals. Davide further admitted that he did not review all the documents provided in the virtual data room although he had access to all the documents. Significantly, Davide admitted that he did not review documents showing the details of VASA's customer deposits, the detailed VASA accounts receivable report, or the documents showing cash advances from TSS to VASA for future orders, even though they were all available to him in the virtual data room.

It is not unreasonable for the jury to conclude Davide was provided with everything necessary to determine there was not a substantial backlog of orders, especially considering Davide's extensive corporate and business experience. And Davide was permitted by the

Skoldebergs to contact the Skoldebergs' accountant with any questions over the financials. However, Davide chose not to contact the accountant or inquire further into the financials before he purchased the businesses. Had Pesca done a more thorough job during its due diligence, it may have discovered that Davide's own subjective belief that there were $688,000 worth of backlogged orders was inaccurate or that the "customer deposits" were for "future" orders rather than current, pending orders.

We cannot conclude as a matter of law that the customer deposit entry—in the context of all the information available in the virtual data room and the explanations from the CPA experts— or the Skoldebergs' statement that everything was "good and correct" was a material misrepresentation that Pesca justifiably relied upon and was intended to induce Pesca into purchasing the businesses. We also cannot conclude that the evidence is so weak and against the great weight and preponderance of the evidence that the jury's verdict is clearly wrong and unjust. Because the jury could have reasonably concluded that the Skoldebergs did not materially misrepresent its customer deposits with the intent to defraud Pesca, or that Pesca could not have justifiably relied upon the alleged misrepresentations, we conclude the evidence is legally and factually sufficient to support the jury's verdict. Accordingly, we must uphold the jury's verdict and affirm the trial court's take-nothing judgment.

Pesca's third issue is overruled.

### ATTORNEY'S FEES

The agreement to purchase TSS and the assets of VASA provided that the non-prevailing party in any cause of action relating to the agreement shall be liable for the reasonable attorney's fees, expenses, and costs of suit incurred by the prevailing party.

In its first issue, Pesca argues absent a valid agreement to try attorney's fees separately, the Skoldebergs waived their right to attorney's fees when they failed to submit a question on attorney's fees at the first trial on liability before that jury was dismissed. Thus, Pesca argues the trial court erred when it empaneled a second jury for a separate jury trial on attorney's fees. Pesca asks this court to reverse the award of attorney's fees.

## A. The Skoldebergs Waived their Claim to Attorney's Fees

"When a claimant wishes to obtain attorney's fees from the opposing party, the claimant must prove that the requested fees are both reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019). The reasonableness and necessity of attorney's fees are normally fact issues for the jury, though the parties can agree otherwise if they wish. *Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 658 n.38 (Tex. 2009); *Rohrmoos*, 578 S.W.3d at 489 ("Both elements are questions of fact to be determined by the fact finder and act as limits on the amount of fees that a prevailing party can shift to the non-prevailing party.").

Rule 270 of the Texas Rules of Civil Procedure provides, in relevant part, "that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." TEX. R. CIV. P. 270. Rule 279 provides, in relevant part, that "[u]pon appeal, all independent grounds of recovery . . . not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279; *see also State Farm Mut. Auto. Ins. Co. v. Nicastro*, No. 05-23-00362-CV, 2025 WL 399674, at *10 (Tex. App.—Dallas Feb. 5, 2025, pet. denied) (mem. op.). "[I]t is the responsibility of the party with the burden of proof on a ground of recovery to request that the issue be submitted to the jury." *Unique Staff Leasing, Ltd. v. Cates*, 500 S.W.3d 587, 599 (Tex. App.—Eastland 2016, pet. denied). "In this regard, a party waives its right to

recover attorney's fees when it fails to put on evidence of attorney's fees and fails to request the trial court to submit a question on attorney's fees to the jury." *In re State Farm Mut. Auto. Ins. Co.*, No. 13-24-00162-CV, 2025 WL 3114462, at *8 (Tex. App.—Corpus Christi–Edinburg Nov. 6, 2025, orig. proceeding).

Here, the Skoldebergs' request for attorney's fees was a contested issue. They failed to present evidence on attorney's fees or submit a jury question on the reasonableness and necessity of attorney's fees to the jury before the jury was dismissed. Consequently, under Rules 270 and 279 of the Texas Rules of Civil Procedure, the Skoldebergs waived their claim to attorney's fees when they failed to present evidence or submit a jury question on their claim for attorney's fees to the first jury that determined liability. *See Cates*, 500 S.W.3d at 599–600 (holding a party waived its claim to attorney's fees when it did not submit the issue to the first jury that determined liability even though a second jury heard the issue); *Allstate Fire and Cas. Ins. Co. v. Harper*, 706 S.W.3d 460, 466 (Tex. App.—Austin 2024, no pet.) (holding a party waived its right to attorney's fees when it failed to submit the question to the jury before the jury was dismissed).

The Skoldebergs argue they did not waive their claim for attorney's fees because the issue was submitted to a second jury rather than to the bench and Pesca's right to have the issue determined by a jury was not violated. However, the cases cited by the Skoldebergs are either not persuasive or they are distinguishable.

In *Great National Corp. v. Campbell*, 687 S.W.2d 450 (Tex. App.—Dallas 1985, writ ref'd n.r.e.), it is not clear whether the trial court made the decision to have two separate trials before commencing the first trial. If so, this may have been permissible under Rule 174(b) of the Texas Rules of Civil Procedure. *See In re State Farm Mut. Auto. Ins. Co.*, 712 S.W.3d 53, 62–63 (Tex. 2025) (orig. proceeding). Based on the scarce facts presented in the opinion, we are unable

to determine whether that appeal is distinguishable from the case at bar. Moreover, *Campbell* is not binding authority on this court.

In *Mintz v. Carew*, No. 05-16-00997-CV, 2018 WL 833371, at *3 (Tex. App.—Dallas Feb. 13, 2018, pet. denied) (mem. op.), "the trial court clearly informed the parties—both before and during the trial—that attorney's fees would not be presented to the jury." In a post-trial hearing, the trial court stated it would not entertain the argument that the appellees waived their right to attorney's fees because it had not allowed the appellees to present evidence of attorney's fees. *Id.* The Dallas Court of Appeals concluded that under these facts the appellees did not waive their right to present evidence on attorney's fees after the first jury was dismissed. *Id.* Here, in contrast, the trial court did not make any ruling on the record regarding a separate trial on attorney's fees until after the first jury was dismissed. By that time, the trial court was not permitted to admit any further evidence on a contested issue that should have been tried to the first jury. *See* TEX. R. CIV. P. 270. To be clear, our holding here does not deprive a trial court of its pre-trial discretion to "order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue" under Rule 174(b) of the Texas Rules of Civil Procedure. *See* TEX. R. CIV. P. 174(b).[2] But the trial court in this case did not make a pre-trial ruling that attorney's fees would be tried separately; rather, it ordered a second jury trial on attorney's fees *after* the first trial had concluded even though the issue had already been waived under Rules 270 and 279.

In *Commerce & Industry Insurance Co. v. Ferguson-Stewart*, 339 S.W.3d 744, 748–49 (Tex. App.—Houston [1st Dist.] 2011, no pet.), during the trial, the law was unclear on whether the trial court or a jury determines attorney's fees under section 408.221 of the Texas Labor Code.

---

[2] We note Rule 174 is listed under the heading "Pre-Trial Procedure" in the rules of civil procedure. *See Ad Villarai, LLC v. Chan Il Pak*, 519 S.W.3d 132, 138 (Tex. 2017) (relying on the title of a rule of civil procedure to ascertain the drafter's intent); ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 221 (2012) ("The title and headings are permissible indicators of meaning.").

*See Transcon. Ins. Co. v. Crump*, 330 S.W.3d 211, 229 (Tex. 2010) ("The statute is silent on the critical judge-or-jury question [and] [b]oth parties offer legitimate, reasonable interpretations of §408.221 . . . ."). Ferguson-Stewart submitted her attorney's fees' request in a post-trial motion for the trial court to decide the issue of attorney's fees. *Ferguson-Stewart*, 339 S.W.3d at 748. The insurance carrier argued Ferguson-Stewart waived her right to attorney's fees when she failed to submit the issue to the jury. *Id.* While the case was on appeal, the supreme court clarified the law and held it was permissible for a jury to determine attorney's fees. *Id.; see also Crump*, 330 S.W.3d at 232 ("[W]e hold that an insurance carrier is entitled to have a jury determine the disputed amount of reasonable and necessary attorney's fees for which it is liable under § 408.221(c)."). Given the uncertainty in the law when the case was tried, the Houston Court of Appeals decided to remand the cause so that a jury could determine attorney's fees. *Ferguson-Stewart*, 339 S.W.3d at 748 ("Remand for a jury trial is appropriate when a trial court improperly fails to heed the request for a jury"). In *Discover Prop. & Cas. Ins. Co. v. Tate*, 298 S.W.3d 249, 257 (Tex. App.—San Antonio 2009, pet. denied), this court grappled with the same statute and determined that due to the uncertainty of the law, and in the interest of justice, the cause should be remanded for a jury trial on attorney's fees. Both of those cases dealt with the uncertainty of which factfinder determines attorney's fees under that particular statutory scheme. But that is not the situation here.

Finally, in *SEECO, Inc. v. K.T. Rock, LLC*, 416 S.W.3d 664, 673–74 (Tex. App.—Houston [14th Dist.] 2013, pet. denied), the appellate court's decision changed the prevailing party and remanded the cause for the factfinder to determine the amount of attorney's fees the newly-minted prevailing party was entitled to receive. *SEECO* is clearly distinguishable from this case.

*B. There was not a Valid and Enforceable Rule 11 Agreement to Try Attorney's Fees Separately*

To the extent the Skoldebergs argue there was a valid Rule 11 agreement to try the attorney's fees separately, we disagree.

Rule 11 of the Texas Rules of Civil Procedure states that "[u]nless otherwise provided in these rules, no agreement between attorneys or parties touching upon any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record." TEX. R. CIV. P. 11. "To be effective, a Rule 11 agreement must consist of a written memorandum which is complete within itself in every material detail, and which contains all of the essential elements of the agreement." *Shamrock Psychiatric Clinic, P.A. v. Tex. Dep't of Health & Hum. Servs.*, 540 S.W.3d 553, 561 (Tex. 2018) (internal quotation marks omitted). "The purpose of Rule 11 is to ensure that agreements of counsel affecting the interests of their clients are not left to the fallibility of human recollection, or interpretation, and that the agreements themselves do not become the sources of controversy." *In re State Farm*, 2025 WL 3114462, at *6 (internal quotation marks omitted).

The Skoldebergs do not point us to a valid written Rule 11 agreement regarding attorney's fees in the record, and we have not found one upon our own independent review of the record. Thus, although the trial court insisted that the parties agreed to try attorney's fees separately, a valid Rule 11 agreement must have been made in open court and read into the record. We must determine whether the trial court's conclusion is supported by the record.

Here, the jury trial on liability concluded on March 1, 2024, and the jurors were dismissed. The Skoldebergs never presented evidence on the reasonableness or necessity of attorney's fees, nor did they submit an attorney's fees question to the jury. More than a month after the jury that determined liability was dismissed, the Skoldebergs filed a post-verdict motion requesting the trial

court declare them as the prevailing parties and requesting an award of attorney's fees. On May 13, 2024, Pesca filed a motion to strike the Skoldebergs' request for attorney's fees arguing the Skoldebergs have waived their right to attorney's fees by failing to present evidence and failing to submit a jury question on their claim for attorney's fees.

That same day, the trial court held a hearing on the Skoldebergs motion to declare them as the prevailing party and to consider their request for attorney's fees. In the hearing, Pesca raised the topic of whether the Skoldebergs waived their right to attorney's fees by failing to submit this issue to the first jury. The transcript of the hearing clearly shows Pesca wanted to urge its motion to strike the request for attorney's fees while the Skoldebergs wanted a declaration that they were the prevailing party from the jury trial on liability. The Skoldebergs also sought to set a second trial for a jury to determine the attorney's fees. However, the trial court expressed its desire to hear the motion to strike the request for attorney's fees at a later date and proceed with simply determining who the prevailing party was at trial. Counsel for the Skoldebergs replied: "We're fine deferring the decision about the reasonableness and necessity of attorney's fees to a later date, depending on the Court's ruling [on Pesca's motion to strike the request for attorney's fees]." The Skoldebergs' counsel then stated: "We'd also be willing to stipulate to setting a one-day jury trial on that because it seemed to be what the motion was going at." The trial court then asked Pesca's counsel if she wanted a jury trial on its motion to strike the request for attorney's fees. Pesca's counsel responded "[y]es" but then asserted the Skoldebergs failed to prove the parties reached an agreement that the trial court would rule on the attorney's fees. The trial court then stated the Skoldebergs' counsel had agreed to a jury trial "if you would like a jury trial[,]" to which Pesca's counsel replied "yes" again. The court then stated:

> Or a bench trial. Either way. And I just want to be sure which way you want to go. Do you want a jury trial on that issue? Or do you want a bench trial on that

issue? Something to consider. But, respectfully, I am going to allow the actual determination as to whether or not attorney's fees are reasonable or the request to strike attorney's fees to occur at a later date.

The Skoldebergs point to this exchange to claim that Pesca agreed to submit the issue of attorney's fees to a second jury. We disagree.

First, it appears the trial court was asking Pesca whether it wanted to have its motion to strike attorney's fees heard by a jury, not whether it agreed to have a second jury trial on attorney's fees. While we can't imagine why that motion would be submitted to a jury, that is the question the trial court asked. Second, to the extent the Skoldebergs argue the trial court asked Pesca whether it wanted to have the Skoldebergs' claim for attorney's fees submitted to the bench or to another jury, we note that it appears the trial court may have put the proverbial cart before the horse. Before inquiring of the parties whether they wished to proceed with a bench trial or a jury trial, the trial court should have heard the merits of Pesca's motion to strike attorney's fees to determine whether the Skoldebergs waived their right to attorney's fees.

Simply stated, the record is not a model of clarity about what the parties were agreeing to. *See In re State Farm*, 2025 WL 3114462, at *7 (concluding there was not a valid Rule 11 agreement on attorney's fees because "the ambiguity of the agreement read into the record is the source of the parties' controversy, and the varying interpretations of the agreement are subject to the fallibility of human recollection"). We conclude this exchange is not a clear and unambiguous agreement to try attorney's fees separately, especially considering the exchange occurred after the first jury was dismissed and while Pesca's motion to strike attorney's fees remained pending before the trial court.

The trial court never ruled on Pesca's motion to strike attorney's fees. Nevertheless, the trial court empaneled a second jury to determine the Skoldebergs' claim for attorney's fees. Prior to the commencement of the second jury trial, Pesca re-urged its motion to strike stating "we

shouldn't even be [having] this jury trial because . . . the issue of attorney[']s fees was supposed to be heard by the [first] jury." The following exchange then ensued:

| | |
|---|---|
| Trial Court: | "[A]t trial, both parties agreed that attorney[']s fees would be determined thereafter. And so—you're shaking your head in the negative. Were you present at the time, or do you have a transcript that says otherwise." |
| Pesca's Counsel: | "I think we can get you the transcript. I haven't looked through it, maybe I missed it. I don't believe that's correct." |
| Trial Court: | "Okay. I respectfully disagree . . . since I was present and I was here, and both sides indicated they were going to wait on attorney's fees. And if that is not indicated in the record, let me make it clear that both sides agreed that attorney[']s fees would be taken up at a different time. But if you see something in the transcript that is otherwise, feel free to let me know. Respectfully, though, we have a motion to strike. [Pesca's other counsel], can you tell me what that's about?" |

Pesca then argued that there was no agreement of any kind, on the record or otherwise, to try attorney's fees separately and contended it was error for the trial court to submit an issue to a second jury that should have been submitted to the first jury. The trial court again asked Pesca to provide a transcript showing it did not agree to try attorney's fees separately. Pesca replied there is no transcript showing an agreement and essentially argued he would be unable to prove a negative.

"We determine the scope of a Rule 11 agreement by examining the words used, the surrounding circumstances, the allegations in the pleadings, and the attitude of the parties with respect to the issues." *See In re State Farm*, 2025 WL 3114462, at *7. These exchanges between the parties and the trial court do not reflect an agreement among the parties to try attorney's fees separately.

The Skoldebergs have not pointed us to an actual agreement read into the record between the parties to try attorney's fees separately from the jury trial on liability and we have found no

such agreement upon our independent review of the record. And the trial court's memory is not sufficient since, as stated above, the purpose of Rule 11 is to ensure the terms of agreements are not left to "the fallibility of human recollection." *See id.* at \*6.

Absent evidence of an agreement in the record to try attorney's fees separately, the attorney's fee issue should have been submitted to the first jury. Because the Skoldebergs failed to submit evidence on attorney's fees, failed to request a jury question regarding the reasonableness and necessity of their attorney's fees, and failed to produce an agreement either written or read into the record that attorney's fees would be tried separately, we hold the Skoldebergs waived recovery of attorney's fees. *See Cates*, 500 S.W.3d at 600; *RDG P'ship v. Long*, 350 S.W.3d 262, 277 (Tex. App.—San Antonio 2011, no pet.).

Pesca's first issue is sustained.

### EXPERT TESTIMONY

Because we have determined the Skoldebergs waived their right to attorney's fees when it failed to submit a question on the issue in the first jury trial, we need not address Pesca's second issue that the trial court abused its discretion when it excluded Pesca's experts' testimony from the second jury trial on attorney's fees. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

### CONCLUSION

We reverse the portion of the trial court's judgment awarding the Skoldebergs attorney's fees and render judgment that the Skoldebergs take nothing on their claim for attorney's fees. We affirm the trial court's judgment in all other respects.

Irene Rios, Justice